## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

|  |  |  |
|---|---|---|
| **Vistra Corp.;** | ) | |
| **Dynegy Marketing and Trade LLC,** | ) | |
| | ) | |
| **Petitioners,** | ) | |
| | ) | |
| **v.** | ) | Case No. **23-1186** |
| | ) | |
| **Federal Energy Regulatory Commission,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

_____)

## PETITION FOR REVIEW

Pursuant to 16 U.S.C. § 825*l*(b), Federal Rule of Appellate Procedure 15(a), and D.C. Circuit Rule 15, Vistra Corp. and Dynegy Marketing and Trade LLC, (together, "Vistra"), hereby petition the Court for review of the following orders issued by the Federal Energy Regulatory Commission:

1. *PJM Interconnection, L.L.C.*, Docket No. EL21-91-000, "Order Establishing Hearing and Settlement Judge Procedures To Determine The Capital Recovery Factor Values" 182 FERC ¶ 61,194 (Mar. 24, 2023) ("Initial Order"); and

2. *PJM Interconnection, L.L.C.*, Docket No. ER21-91-001, "Notice of Denial of Rehearing by Operation of Law and Providing for Further

Consideration," 183 FERC ¶ 62,094 (May 22, 2023) ("Rehearing Order").

On August 10, 2021, FERC initiated a show cause proceeding pursuant to Section 206 of the Federal Power Act to evaluate whether the continued use of certain Capital Recovery Factors ("CRFs") to calculate a Capital Cost Recovery Rate for resources that were committed to provide Black Start service[1] prior to June 2021 is just and reasonable. FERC instituted that proceeding in response to third-party concerns that the CRF values applied may no longer be just and reasonable due to an intervening reduction in federal corporate tax rates.

In response, PJM Interconnection, L.L.C. proposed to retain the use of the stated CRFs for existing Black Start investments, arguing that the continued application of the CRFs was necessary to respect the settled expectations of existing Black Start owners who had entered into commitments and made investments in reliance on these values. Vistra and other parties submitted comments supporting PJM's proposal to maintain the CRF values for existing investments. On March 24, 2023, FERC issued the Initial Order, which rejected PJM's proposal and arguments in support thereof, and set for hearing the determination of whether, as a result of

---

[1] Black Start service allows a power station or electric grid to recover from a partial or complete shutdown of the system.

the aforementioned changes in the federal corporate tax rates, the CRF values result in a Capital Cost Recovery Rate that is unjust and unreasonable.

On April 21, 2023, Vistra sought rehearing of the Initial Order. The Commission thereafter issued the May 22 Rehearing Order, which does not address the substance of Vistra's request for rehearing, but deems the request denied pursuant to 16 U.S.C. § 825*l*(a) and this Court's decision in *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc).

Vistra hereby petitions this Court for review of the Initial Order and the Rehearing Order, including on the grounds that FERC's orders (1) violate the Federal Power Act, the Administrative Procedure Act, the *Mobile-Sierra* Doctrine, the Filed Rate Doctrine, and the Rule Against Retroactive Rulemaking and (2) are arbitrary and capricious, an abuse of discretion, not supported by substantial evidence, and otherwise contrary to law.

Because Vistra's April 21, 2023 request for rehearing is deemed to have been denied on May 22, 2023, this petition for review is timely. Venue is proper under 16 U.S.C. § 825*l*(b). Copies of the challenged orders are attached as Attachments A and B.

Vistra respectfully requests that the Court hold unlawful, vacate, enjoin, and set aside the Commission's orders and grant such further relief as may be appropriate.

Respectfully submitted,

/s/ *James E. Tysse*
James E. Tysse
Stephen J. Hug
Benjamin N. Reiter
AKIN GUMP STRAUSS HAUER
  & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
jtysse@akingump.com
shug@akingump.com
breiter@akingump.com

July 17, 2023

4

## CORPORATE DISCLOSURE STATEMENT

In accordance with Rule 26.1 of the Rules of this Court, Vistra Corp. and Dynegy Marketing and Trade LLC provide the following disclosure statement:

Vistra Corp. ("Vistra"), a nongovernmental corporation, is publicly traded on the New York Stock Exchange (NYSE: VST). The Vanguard Group, Inc. holds 10 percent or more of Vistra's stock.

Dynegy Marketing and Trade, LLC ("DMT") is organized and existing under the laws of Delaware. DMT is an indirect, wholly owned subsidiary of Vistra.

Respectfully submitted,

/s/ *James E. Tysse*
James E. Tysse
Stephen J. Hug
Benjamin N. Reiter
AKIN GUMP STRAUSS HAUER
  & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
jtysse@akingump.com
shug@akingump.com
breiter@akingump.com

5

## CERTIFICATE OF SERVICE

Pursuant to F.R.A.P. 15(c) and 25(d), I hereby certify that I caused the foregoing Petition for Review to be served upon the Secretary of the Federal Energy Regulatory Commission and the Office of the Solicitor of the Federal Energy Regulatory Commission at the following addresses:

> Ms. Kimberly D. Bose, Secretary
> Federal Energy Regulatory Commission
> 888 First St., NE
> Washington, DC 20426

> Robert H. Solomon, Solicitor
> Federal Energy Regulatory Commission
> 888 First Street, N.E.
> Washington, D.C. 20426

Pursuant to 18 C.F.R. § 385.2012 and 28 U.S.C. § 2112(a), I further certify that I will mail a date-stamped copy of this petition to the Office of the Secretary, Federal Energy Regulatory Commission, 888 First Street, N.E., Washington, DC 20426.

Pursuant to F.R.A.P. 15(c), I further certify that I caused the foregoing document to be served by e-mail on all the parties on the Commission's service list for Docket No. EL21-91, which is attached hereto.

Respectfully submitted,

/s/ *James E. Tysse*
James E. Tysse

July 17, 2023

# ATTACHMENT A

182 FERC ¶ 61,194
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION


Before Commissioners:  Willie L. Phillips, Acting Chairman;
                       James P. Danly, Allison Clements,
                       and Mark C. Christie.


PJM Interconnection, L.L.C.                    Docket No. EL21-91-000

ORDER ESTABLISHING HEARING AND SETTLEMENT JUDGE PROCEDURES
TO DETERMINE THE CAPITAL RECOVERY FACTOR VALUES

(Issued March 24, 2023)

1.      On August 10, 2021, the Commission initiated a proceeding pursuant to section 206 of the Federal Power Act to examine whether the existing Capital Recovery Factor (CRF) values in the Capital Cost Recovery Rate for generating units that were selected to provide Black Start Service prior to June 6, 2021 remain just and reasonable.[1]  In this order, we establish hearing and settlement procedures to determine whether, as a result of changes from the Tax Cuts and Jobs Act of 2017 (TCJA), the existing CRF values result in a Capital Cost Recovery Rate for generating units that were selected to provide Black Start Service prior to June 6, 2021 that is unjust and unreasonable.

## I.     **Background**

2.      PJM conducts competitive solicitations to select units to provide Black Start Service.  Owners of Black Start units selected in these competitive solicitations are paid a Capital Cost Recovery Rate and can choose between a Commission-approved, unit-specific rate (which would require a separate FPA section 205 filing with the Commission with a rate schedule) or a generic rate prescribed in Schedule 6A of the PJM Tariff.[2]  PJM sends acceptance letters to owners of Black Start units selected in these competitive solicitations memorializing the Black Start Service agreements; these acceptance letters are not filed at the Commission.

---

[1] *PJM Interconnection, L.L.C.*, 176 FERC ¶ 61,080 (2021) (August 2021 Order).

[2] PJM, OATT SCHEDULE 6A, OATT SCHEDULE 6A, Schedule 6A (12.3.0), § 17.

3.    The Tariff methodology in Schedule 6A includes a mechanism for the determination of the CRF values in the Capital Cost Recovery Rate, and the determination of that rate depends on the date on which PJM selects the Black Start unit to provide service.  For units selected prior to June 6, 2021, the Capital Cost Recovery Rate contains a table for determining the CRF value.[3]  These CRF values were established in 2009 and developed within a PJM Stakeholder process and were filed with the Commission as stated CRF values without cost of service workpapers or support.[4]  PJM explained that the CRF values are designed to ensure that the recovery of investment in Black Start units that are selected to provide Black Start Service are depreciated in a manner commensurate with the age of the Black Start unit at the time of the improvement and represent a reasonable recovery of the Black Start unit owner's capital investment.[5]

4.    On April 7, 2021, PJM proposed revisions to the Capital Cost Recovery Rate and the commitment period for Black Start units that make capital investments *after* June 6, 2021.  For units selected after June 6, 2021, the CRF value is determined according to a formula.[6]  In that proceeding, PJM indicated that it was introducing the formula so that it would automatically update the CRF values for federal and state tax rate changes as well as other revisions for new Black Start units, and, as relevant here, PJM retained the stated value table of CRF values for units selected prior to June 6, 2021.  The Commission accepted the formulaic calculation of CRF values for the units selected after June 6, 2021 in the August 2021 Order.[7]

5.    The August 2021 Order also initiated the proceeding pursuant to section 206 of the FPA to examine whether the existing CRF values in Schedule 6A for the pre-June 6, 2021 period remain just and reasonable.  The Commission stated that the evidence in the record appears to show that the stated CRF values are premised, in relevant part, on an assumed federal corporate income tax rate that pre-dates the TCJA.[8]  Because the TCJA, among other things, lowered the federal corporate income tax rate from a maximum 35% to a flat

---

[3] OATT SCHEDULE 6A, OATT SCHEDULE 6A (12.2.0), ¶ 18, https://etariff.ferc.gov/TariffSectionDetails.aspx?tid=1731&sid=296855.

[4] *See* PJM, Transmittal, Docket No. ER21-1635-000, at 12 (filed April 7, 2021) (citing Hauske Aff. ¶ 10, "neither the Tariff nor the PJM Manuals specify their bases or how they were calculated").

[5] PJM, Docket No. ER09-730-000, Transmittal at 4.

[6] *Id.*

[7] August 2021 Order, 176 FERC ¶ 61,080 at P 47.

[8] *Id.* P 46.

21% rate effective January 1, 2018; the Commission stated that the CRF values for Black Start units with Existing Black Start Investments may no longer be just and reasonable as they may no longer accurately reflect the costs of providing service.[9]

6.      In the August 2021 order, the Commission also noted that Black Start unit owners asserted that the *Mobile-Sierra* doctrine constrains the Commission in this proceeding to review of the Black Start unit service agreements under a public interest standard.[10]  The Commission found that Black Start unit owners failed to provide an agreement indicating that the public interest standard applies or that these rates should be considered anything other than tariff-based rates established under Schedule 6A and subject to PJM's *Memphis* clause,[11] and owners of Black Start units may present that evidence in this show cause proceeding.[12]

## II.    Notice, Intervention, and Comments

7.      Notice of the proceeding was published in the *Federal Register*, 87 Fed. Reg. 45,980 (Aug. 17, 2021), with interventions due on or before September 1, 2021.[13]

8.      Timely motions to intervene were filed by PJM Interconnection, L.L.C.; Office of the People's Counsel for the District of Columbia; Indiana Office of Utility Consumer Counselor; Maryland Office of the People's Counsel; Office of the Ohio Consumers' Counsel; LS Power Development, LLC (LS Power); PJM Power Providers Group; PJM Industrial Customers Coalition; American Municipal Power, Inc. (AMP); Hazelton Generation LLC (Hazelton); Calpine Corporation; Old Dominion Electric Cooperative (ODEC); Vistra Corp. and Dynegy Marketing and Trade, LLC (Vistra/Dynegy); J-Power USA Development Co. Ltd. (J-Power); Duke Energy Corporation; American Electric Power Service Corporation; NRG Power Marketing LLC and Midwest Generation, LLC; Ohio Federal Energy Advocate; Dominion Energy Services, Inc.  Late-filed motions to

---

[9] *Id.*

[10] *United Gas Pipeline Co. v. Mobile Gas Serv. Corp.*, 350 U.S. 332 (1956); *FPC v. Sierra Pac. Power Co.*, 350 U.S. 348 (1956) (*Mobile-Sierra*).

[11] *United Gas Co. v. Memphis Gas Div.*, 358 U.S. 103 (1958) (*Memphis*).

[12] August 2021 Order, 176 FERC ¶ 61,080 at P 52.

[13] Twenty-one days from the issuance of the August 2021 Order.  Pursuant to the August 2021 Order, comments from PJM were due 60 days from issuance and responses were due 30 day after the initial PJM response.

intervene were filed by Delaware Division of the Public Advocate; Monitoring Analytics, LLC;[14] and St Joseph Energy Center, LLC (St. Joseph Energy).

9.      PJM filed comments in response to the August 2021 Order, and Dominion Energy Services, Inc., PJM Power Providers Group, Indicated Suppliers,[15] and Vistra Corp. and Dynegy Marketing and Trade, LLC (Vistra/Dynegy) filed comments in support of PJM's response.  PJM Independent Market Monitor (Market Monitor), American Municipal Power, Inc. and Old Dominion Electric Cooperative (AMP/ODEC), and Joint Consumer Advocates[16] filed comments in opposition to the PJM response.  Additional answers were filed by AMP and ODEC, Vistra/Dynegy, and the Market Monitor.

## III.    Discussion

### A.    Procedural matters

10.     Pursuant to Rule 214 of the Commission's Rules of Practice and Procedure,[17] the timely, unopposed motions to intervene serve to make the entities that filed them parties to this proceeding.

11.     Pursuant to Rule 214(d) of the Commission's Rules of Practice and Procedure,[18] we grant the late-filed motion to intervene of the Delaware Division of the Public Advocate; Market Monitor, and St. Joseph Energy given their interest in the proceeding, the early stage of the proceeding, and the absence of undue prejudice or delay.

12.     Rule 213(a)(2) of the Commission's Rules of Practice and Procedure prohibits an answer to an answer unless otherwise ordered by the decisional authority.[19]  We accept the

---

[14] As the PJM Independent Market Monitor (Market Monitor).

[15] The Indicated Suppliers are LS Power, J-POWER Hazleton Generation, LLC, and St. Joseph Energy.

[16] The Joint Consumer Advocates are Office of the People's Counsel for the District of Columbia, Delaware Division of the Public Advocate, Indiana Office of Utility Consumer Counselor, Maryland Office of the People's Counsel, and Office of the Ohio Consumers' Counsel.

[17] 18 C.F.R. § 385.214.

[18] 18 C.F.R. § 385.214(d).

[19] 18 C.F.R. § 385.213(a)(2).

answers filed by AMP/ODEC, Vistra/Dynegy, and the Market Monitor because they have provided information that assisted us in our decision-making process.

### B.    Substantive Matters

13.    As discussed below, we establish hearing and settlement procedures to determine the CRF values in the Capital Cost Recovery Rate for generating units that were selected to provide Black Start Service prior to June 6, 2021.

### 1.    Application of Mobile-Sierra Public Interest Standard

14.    Indicated Suppliers maintain that owners of Black Start units made offers in response to various Requests for Proposals issued by PJM, which were accepted by PJM,[20] and PJM's acceptance of those offers created binding contracts which are subject to the "*Mobile-Sierra* doctrine" that cannot be modified absent a showing that the relevant contract "harms the public interest."[21] Indicated Suppliers argue that "absent contractual language 'susceptible to the construction that the rate may be altered while the contract[] subsist[s],' the *Mobile-Sierra* doctrine applies."[22] Further, Indicated Suppliers argue that *Memphis* stands for the proposition that parties may "contract out of the *Mobile-Sierra* presumption by specifying in their contracts that a new rate filed with the Commission would supersede the contract rate," but that "the *Mobile-Sierra* presumption remains the default rule."[23]

15.    Indicated Suppliers contend that there is also no basis for claiming that agreements for Black Start Service between PJM and a Black Start unit owner are "tariff-based rates established under Schedule 6A and subject to PJM's *Memphis* clause,"[24] and argue instead that the Tariff is a completely separate document and there is nothing to indicate any intent for any provision of the Tariff to be incorporated into individual contracts for Black

---

[20] *See* Indicated Suppliers at 6, n.24.

[21] *Id.* at 3 (citing *ISO New England Inc.*, 170 FERC ¶ 61,011 at PP 14-15 (2020) (*ISO New England*); *SW Power Pool, Inc.*, 158 FERC ¶ 61,063 (2017)) (*SW Power Pool*).

[22] *Id.* at 7.

[23] *Id.* (citing *Morgan Stanley Capital Grp. Inc. v. Public Util. Dist. Of Snohomish Cty.*, 554 U.S. 527, 534 (2008); *Boston Edison Co. v. FERC*, 233 F.3d 60, 67 (1st Cir. 2000) (it is "the ordinary, default rule that Mobile-Sierra govern[s] FERC-proposed changes")).

[24] *Id.* at 9 (citing *Memphis*, 358 U.S. 103).

Start Service.[25]  Indicated Suppliers contend that "[i]n order to uphold the validity of terms incorporated by reference it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms,"[26] and there is nothing indicating that the Black Start unit owners agreed to the inclusion of a *Memphis* clause in their contracts or contemplated any future changes in their contracts.[27]

16.    Vistra/Dynegy argues that even if the Black Start commitment at issue here does not constitute a contract rate, the Commission should still exercise its discretion to apply the public interest standard.[28]  Vistra/Dynegy maintains that the Commission has the discretion to apply the more stringent standard reflected in the *Mobile-Sierra* presumption outside of the context of a contract rate, and has done so where there is a compelling interest in rate stability as is the case here.[29]  In support, Vistra/Dynegy argues that generation resources made highly individualized, competitive investment decisions based on the ability to recover costs based on the stated CRFs and the associated commitment period.[30]

17.    PJM states that the *Memphis* clause set forth in Tariff, Part I, section 9, permits PJM to make prospective changes to its Tariff rates, terms, conditions, and charges.  PJM nonetheless argues that the Commission should, under the just and reasonable standard, not change the CRF values that determine the Capital Cost Recovery Rate due to the generators' reliance interest.[31]

---

[25] *Id.*

[26] *Id.* at 11 (citing *Lamb v. Emhart Corp.*, 47 F.3d 551, 558 (2d Cir.1995).

[27] *Id.*

[28] Vistra/Dynegy Comments at 11.

[29] *Id.* at 12 (citing *Devon Power LLC*, 134 FERC ¶ 61,208, at P 2 (2011) (*Devon Power*) ("[T]he Commission has discretion to consider and decide whether future challenges to rates should be evaluated under a more rigorous application of the statutory 'just and reasonable' standard of review."), *aff'd sub nom*, *New England Power Generators Ass'n, Inc. v. FERC*, 707 F.3d 364, 370-71 (D.C. Cir. 2013))

[30] *Id.* at 7.

[31] PJM also notes that, while some parties argued that existing Black Start Service providers are recovering Black Start capital costs under a rate that is protected under the *Mobile-Sierra* doctrine, PJM does not view the *Mobile-Sierra* argument as "necessary to this question and does not address it."  PJM Comments at 2, n.7.

18.    AMP contends that the notification letters from PJM to Black Start unit owners acknowledging each unit's Black Start Service commitment provide only the opportunity to recover new or additional Black Start Capital Costs, as set forth in Tariff Schedule 6A, and the notification letters do not qualify for *Mobile-Sierra* protection.[32] AMP contends that there is no public interest standard protection for the notification letters because the notification letters are not contracts.  AMP further contends that the notification letters do not contain Mobile-Sierra clauses and were not filed with FERC for approval.  AMP maintains that the Commission's regulations also require specific language where parties to a contract intend to prevent unilateral rate changes and there has been no indication that the existing Black Start unit notification letters include such language.[33]

19.    AMP states that there is no rational basis for asserting that a prospective change to the rate for Black Start Service provided by existing units would result in retroactive ratemaking, prohibited or otherwise.  In support, AMP contends that the Tariff Schedule 6A establishes an annual revenue requirement that is recovered through a monthly charge applied to network and point-to-point Transmission Customers within the relevant transmission zone on a going forward basis.  A prospective adjustment to the revenue requirement formula to be effective on the refund date established in this FPA section 206 proceeding "is in no respect prohibited retroactive ratemaking."[34]

20.    Joint Consumer Advocates contend that whatever the expectations of the generators may be (or have been), (1) the Capital Cost Recovery Rate provisions of the Tariff are subject to change pursuant to FPA sections 205 and 206; and (2) the Tariff revisions filed in 2009 after stakeholder collaboration did not include a moratorium on rate changes.  As such, Joint Consumer Advocates state that PJM could have filed at any time under FPA section 205 to increase the 2009 CRF values, and any interested party – or the Commission itself – could have initiated a section 206 complaint seeking the same relief.[35]

### a.    Determination

21.    The courts have distinguished between "prescriptions of general applicability rather than 'contractually negotiated rates,'"[36] and we find that the Capital Cost Recovery Rate with the stated CRF values is a Tariff-based rate of general applicability subject to the just

---

[32] AMP November 29, 2021 Comments at 4.

[33] *Id.* (citing 18 C.F.R. § 35.1(d)(3)).

[34] *Id.* at 6.

[35] *Id.* at 9.

[36] *NRG Power Mktg., LLC v. Me. Pub. Utils. Comm'n*, 558 U.S. 165, 176 (2010).

and reasonable standard of review. These CRF values are contained in the Tariff and apply to all Black Start Service providers (selected prior to June 6, 2021). Accordingly, we reject the contention that PJM's acceptance of offers made in response to various Requests for Proposals issued by PJM created binding contracts subject to the *Mobile-Sierra* doctrine.[37]

22. The courts also have found that even when contracts might be deemed subject to the *Mobile-Sierra* doctrine, the utility can assure itself of its ability to modify those contracts by including a "*Memphis*" clause providing that the rate will be the "going rate" on file with the Commission.[38] The PJM Tariff contains a *Memphis* clause, which permits PJM to change the Capital Cost Recovery Rate unilaterally.[39] Moreover, PJM's request for proposals for Black Start Service specifically recognize that "[b]y submitting a proposal to this RFP, [Respondents] are agreeing to be bound by the rate, terms and conditions of service as set forth in the PJM Tariff."[40] The RFP also specifies that: "[a]cceptance of RFP proposals by PJM will be in the form of a notification letter" and "[t]here will be no separate agreement for Black Start Service between the Black Start Unit Owner and PJM since all the terms and conditions are covered by the Governing Agreements referenced above."[41] The Capital Cost Recovery Rate itself (as early as 2010) provided that the CRF values are subject to possible review and modification: "At least

---

[37] *See Wabash Valley Power Ass'n, Inc. v. FERC*, 45 F.4th 115, 120 (D.C. Cir. 2022) ("contract requiring the purchaser to pay a utility's 'going rate' on file with FERC, without more, does not eliminate review under the ordinary just-and-reasonable standard.").

[38] *Memphis*, 358 U.S. 103, 110–13.

[39] PJM, Intra-PJM Tariffs, 9, OATT 9 Regulatory Filings (0.0.0).

[40] PJM, RTO-Wide Five-Year Selection Process Request for Proposal for Black Start Service at 8 (Feb. 1, 2018) (2018 PJM Black Start RFP): pjm-2018-rto-wide-black-start-rfp.ashx. The first five-year RFP process began in 2013 for resources needed in 2015. In February 2018, PJM initiated the second RTO-wide RFP process cycle. In between five-year RTO-wide RFP cycles, PJM uses an incremental RFP process to address specific black start transmission zone needs that could arise from black start unit deactivations or terminations. *See* PJM, PJM Manual 14D, Generator Operational Requirements at 86, (Dec. 21, 2022) (Black Start Generation Procurement) available at: m14d.ashx (pjm.com).

[41] *Id*. at 8, § 3.0.

every two years, PJM shall review the formula and its costs components set forth in this section, and report on the results of that review to stakeholders."[42]

23.     Vistra/Dynegy argues that even if the CRF values in the Capital Cost Recovery Rate are not considered a contract rate subject to the *Mobile-Sierra* doctrine, the Commission should exercise its discretion to apply the public interest standard of review, citing to *Devon Power*.[43]  As we found in *High Island Offshore*, absent compelling circumstances, such as we found to exist in *Devon Power*, we will not exercise our discretion to approve the application of the public interest standard of review outside the context of contract rates.[44]  Vistra/Dynegy have not demonstrated that such compelling circumstances are present here.

### 2.     CRF Values

#### a.     Comments Supporting the Existing CRF Values

24.     PJM maintains that the Commission has accepted different rate and non-rate terms and conditions for existing versus new customers as just, reasonable, and not unduly discriminatory where there are distinctions in timing, notice, and expectations between the two groups.[45]  As such, PJM contends that it would be consistent with precedent to maintain different rates for existing and new Black Start units in these circumstances. PJM also contends that the Commission recognizes that new and existing suppliers/RTO

---

[42] PJM, Intra-PJM Tariffs, OATT SCHEDULE 6A, OATT SCHEDULE 6A (0.0.0), § 18.

[43] *Devon Power LLC*, 134 FERC ¶ 61,208, at P 2 (2011) ("[T]he Commission has discretion to consider and decide whether future challenges to rates should be evaluated under a more rigorous application of the statutory 'just and reasonable' standard of review."), *aff'd sub nom New England Power Generators Ass'n, Inc. v. FERC*, 707 F.3d 364, 370-71 (D.C. Cir. 2013).

[44] *High Island Offshore Sys.*, LLC, 135 FERC ¶ 61,105, at P 25 (2011). *See Devon Power LLC,* 137 FERC ¶ 61,073, at P 36 (2011) (citing *Petal Gas Storage*, *LLC*, 135 FERC ¶ 61,152, at P 17 (2011); *S LNG Co.*, *LLC*, 135 FERC ¶ 61,153, at P 24 (2011); *Carolina Gas Transmission Corp.*, 136 FERC ¶ 61,014, at P 18 (2011)).

[45] *Id.* at 5, n.13 (referencing *Mo. River*, 918 F.3d 954, 958 ("A mere difference in the treatment of two entities does not violate that provision [FPA section 206(b)]; instead, undue discrimination occurs only if the entities are 'similarly situated,' such that 'there is no reason for the difference.'" (quoting *State Corp. Comm'n of Kan. v. FERC*, 876 F.3d 332, 335 (D.C. Cir. 2017) & *Transmission Access Policy Study Grp. v. FERC*, 225 F.3d 667, 721 (D.C. Cir. 2000) (per curiam))).

participants are not similarly situated and that distinctions based upon when RTO participants elected to provide a service are permissible.[46]

25.    In further support, PJM states that Black Start Service entails a multi-year commitment, and Black Start units are subject to additional North American Electric Reliability Corporation (NERC) requirements such as emergency preparedness and operations standards to address system restoration,[47] exposing such resources to NERC audits and penalties for non-compliance.  PJM asserts that these NERC requirements are specific to Black Start resources and not required for other generating units.  PJM contends that existing Black Start unit owners (in service before June 6, 2021) weighed the risks and rewards of providing Black Start Service and committed their units based on the stated Capital Cost Recovery Rate derived from CRF values in the Tariff at the time they made that commitment.  PJM contends that the owners of Black Start units selected for Black Start Service prior to June 6, 2021 evaluated the long-term uncertainty from multi-year commitments when considering the stated CRF percentages in the Tariff at the time they voluntarily entered into their commitments.  PJM argues that changing the CRF values for these existing Black Start unit owners to be consistent with those selected after June 6, 2021 would not provide an opportunity to evaluate the proposed new formulaic, annually adjusted CRF value percentages before making a decision to continue to provide their existing commitments.[48]  Rather, PJM states that if PJM were to change these CRF values, those existing Black Start unit owners would not easily unwind their existing financial arrangements.[49]  PJM argues that maintaining the same rates and conditions of service under which Black Start units commit their units is necessary to ensure that PJM can retain the necessary amounts of Black Start Service without risking the loss of existing Black Start suppliers, or impacting the availability of potential bidders for future Black Start Service.[50]

26.    Vistra/Dynegy contends that even if the Commission could determine the impact of the change in federal tax rates, declaring the use of the 2009 CRFs for Black Start units selected for Black Start Service prior to June 6, 2021 to be unjust and unreasonable based

---

[46] *Id.* at 5-6 (citing *ISO New England*, 170 FERC ¶ 61,011 at PP 14-15).

[47] *See Emergency Preparedness and Operations Standard No. EOP-005-3, System Restoration from Blackstart Resources, North American Electric Reliability Corp.*, R11-R16 (Apr. 1, 2019).

[48] *Id.* at 4.

[49] *Id.* at 8.

[50] PJM, Comments, Docket No. ER21-1635-000, at 20,(filed April 7, 2021).

on a change in a single cost component would be contrary to Commission precedent.[51] Vistra/Dynegy maintains that the 2009 stated CRF values were never intended to represent the cost-of-service of individual Black Start resources, but were part of a competitive procurement mechanism designed to incent the most efficient proposals to provide Black Start Service.[52] Vistra/Dynegy argues that the Commission's stated basis for examining the justness and reasonableness of the 2009 CRF values, its assumptions concerning the federal corporate income tax rate, is insufficient to support further action in this proceeding given the other factors that affect the individual companies' tax profiles.[53]

### b.    Comments Opposing the Existing CRF Values

27.    The Market Monitor states that the issue in this case is the level of tax rates and taxes paid. The Market Monitor contends that tax rates are objective facts and therefore do not concern subjective investor expectations.[54] The Market Monitor contends that continuing to pay existing Black Start Service providers using the current CRF values does not reflect the significantly reduced costs that resulted from the TCJA and unambiguously results in a windfall to specific black start units.[55] The Market Monitor argues that it is unduly discriminatory and unjustifiable to allow a class of Black Start Service providers to receive compensation based on the use of demonstrably incorrect tax payments.[56] The Market Monitor proposes to update the CRF values applicable to Black Start units selected for Black Start Service prior to June 6, 2021 to CRF values that reflect

---

[51] Vistra/Dynegy Comments at 5 (citing *Indicated RTO Transmission Owners*, 161 FERC ¶ 61,018, at P 13 (2017) (citing *Carolina Power & Light Co. v. FERC*, 860 F.2d 1097, 1102 (D.C. Cir. 1988))).

[52] Vistra/Dynegy notes PJM's concern that maintaining the rates for existing Black Start resources is necessary to avoid encouraging additional retirements of Black Start capability and disincentivizing participation in future Black Start solicitations, which would exacerbate the challenges facing PJM. *Id.* at 2, 13.

[53] *Id.* at 10.

[54] Market Monitor Comments at 2.

[55] *Id.* at 3. The Market Monitor states that "[i]f black start units continue to receive the annual revenue payments determined by the incorrect CRF, as PJM recommends, customers will overpay black start units that started service during or after 2018 and prior to June 6, 2021, by $126.0 million." *Id.* at 18.

[56] *Id.* at 4.

the return of capital already received by existing black start units, contending that its proposal can be implemented without any retroactive resettlement or disgorgement.[57]

28.    AMP contends that PJM's response to the Commission's inquiry regarding support for retaining current stated CRF values for existing units hinges on PJM's unsupported assertions regarding the expectations of and risks faced by owners of those units.[58]  AMP contends that PJM has not explained how adjusting the CRF value to reflect an actual reduction in the federal corporate income tax applicable to Black Start unit owners would affect any compensation for risk of NERC audits or NERC penalties that may or may not have been built into those owners' expectations.[59]

29.    AMP contends that replacing the stated CRF values in the Tariff with the Commission-approved formulaic methodology for resources selected after June 6, 2021 would reduce risk for these owners, not increase risk.  The formula would increase revenue for these owners in the event of tax rate increases, just as it will decrease revenue to match tax reductions, and therefore reduce the risk of both over- and under-recoveries.[60] AMP contends that given that the formulaic methodology for determining CRF values was vetted in the PJM stakeholder process, litigated in a Commission proceeding, and ultimately approved by the Commission, PJM's assertion that owners of Black Start units selected for Black Start Service prior to June 6, 2021 did not have an opportunity to evaluate the basis for the CRF values and anticipate future changes is unsupported.[61]

30.    Joint Consumer Advocates state that PJM's response does not include any data, calculations, workpapers, or other documentation demonstrating that the 2009 CRF values bear any relationship to the cost of providing Black Start Service.[62]  Joint Consumer Advocates contend that the only objective evidence before the Commission in this proceeding supports the conclusion that the continued use of the 2009 CRF values to set the Black Start Service rate is unjust, unreasonable, and unduly discriminatory.

31.    Joint Consumer Advocates contend that PJM has failed to provide a legitimate basis to assume Black Start Service providers procured prior to June 6, 2021 and Black

---

[57] *Id.* at 20

[58] AMP at 3.

[59] *Id.* at 4.

[60] *Id.* at 5.

[61] *Id*. at 6.

[62] Joint Consumer Advocates Comments at 6.

Start Service providers procured after June 6, 2021 are not similarly situated simply because the providers began providing service to PJM at different times. Joint Consumer Advocates maintain that "new" and "existing" Black Start units provide the same Black Start Service, and the only statutorily authorized compensation under FPA section 205 for "new" and "existing" providers is cost-based compensation.[63]

###    c.    <u>Determination</u>

32.    We set for hearing and settlement judge procedures the determination of whether, as a result of changes from the TCJA, the existing CRF values result in a Capital Cost Recovery Rate for generating units that were selected to provide Black Start Service prior to June 6, 2021 that is unjust and unreasonable. While the record does not contain conclusive evidence that the existing CRF values include a 35% tax rate, the Market Monitor has introduced sufficient evidence that those values may include a 35% tax rate, raising a disputed issue of material fact as to whether changes to the tax rate render the existing CRF values unjust and unreasonable. The import of the tax rate in the determination of the CRF value is a material fact that cannot be determined based on the existing record, which warrants setting the justness and reasonableness of the existing CRF values for hearing and settlement judge procedures.

33.    While we are setting these matters for a trial-type evidentiary hearing,[64] we encourage efforts to reach settlement before hearing procedures commence. To aid settlement efforts, we will hold the hearing in abeyance and direct that a settlement judge be appointed, pursuant to Rule 603 of the Commission's Rules of Practice and Procedure.[65] If parties desire, they may, by mutual agreement, request a specific judge as the settlement judge in the proceeding. The Chief Judge, however, may not be able to designate the requested settlement judge based on workload requirements which determine judges' availability.[66] The settlement judge shall report to the Chief Judge and the Commission within 60 days of the date of the appointment of the settlement judge, concerning the status of settlement discussions. Based on this report, the Chief Judge

---

[63] *Id.* at 10-11.

[64] Trial Staff is a participant in the hearing and settlement judge procedures. *See* 18 C.F.R. § 385.102(b), (c) (2019).

[65] 18 C.F.R. § 385.603.

[66] If parties decide to request a specific judge, they must make their joint request to the Chief Judge by telephone at (202) 502-8500 within five days of this order. The Commission's website contains a list of Commission judges available for settlement proceedings and a summary of their background and experience. (https://www.ferc.gov/available-settlement-judges).

shall provide additional time to continue settlement discussions or provide for commencement of a hearing by assigning the case to a presiding judge.

34.     As we are setting this section 206 proceeding for hearing and settlement procedures, pursuant to section 206(b) of the FPA, we expect that, if the proceeding does not settle, we would be able to render a decision within eight months of the date of filing of briefs opposing exceptions to the Initial Decision.  Thus, if the Presiding Judge were to issue an Initial Decision by March 31, 2024, we expect that, if the proceeding does not settle, we would be able to render a decision by January 31, 2025.

<u>The Commission orders</u>:

     (A)     Pursuant to the authority contained in and subject to the jurisdiction conferred upon the Federal Energy Regulatory Commission by section 402(a) of the Department of Energy Organization Act and the FPA, particularly section 206 thereof, and pursuant to the Commission's Rules of Practice and Procedure and the regulations under the FPA (18 C.F.R. Chapter I), the Commission hereby sets for hearing and settlement judge procedures the determination of whether, as a result of changes from the TCJA, the existing CRF values result in a Capital Cost Recovery Rate that is unjust and unreasonable, as discussed in the body of this order.  However, the hearing shall be held in abeyance to provide time for settlement judge procedures, as discussed in Ordering Paragraphs (D) and (E) below.

     (B)     Pursuant to Rule 603 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.603 (2019), the Chief Judge is hereby directed to appoint a settlement judge in this proceeding within 45 days of the date of this order.  Such settlement judge shall have all powers and duties enumerated in Rule 603 and shall convene a settlement conference as soon as practicable after the Chief Judge designates the settlement judge.  If parties decide to request a specific judge, they must make their request to the Chief Judge within five days of the date of this order.

     (C)     Within 60 days of the appointment of the settlement judge, the settlement judge shall file a report with the Commission and the Chief Judge on the status of the settlement discussions.  Based on this report, the Chief Judge shall provide participants with additional time to continue their settlement discussions, if appropriate, or assign this case to a presiding judge for a trial-type evidentiary hearing, if appropriate.  If settlement discussions continue, the settlement judge shall file a report at least every 60 days thereafter, informing the Commission and the Chief Judge of participants' progress toward settlement.

(D)    If settlement judge procedures fail and a trial-type evidentiary hearing is to be held, a presiding judge, to be designated by the Chief Judge, shall, within 45 days of the date of the presiding judge's designation, convene a prehearing conference in these proceedings in a hearing room of the Commission, 888 First Street, NE, Washington, DC 20426, or remotely (by telephone or electronically), as appropriate.  Such a conference shall be held for the purpose of establishing a procedural schedule.  The presiding judge is authorized to establish procedural dates, and to rule on all motions (except motions to dismiss) as provided in the Commission's Rules of Practice and Procedure

By the Commission.

( S E A L )

Debbie-Anne A. Reese,
Deputy Secretary.

**ATTACHMENT B**

183 FERC ¶ 62,094
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

PJM Interconnection, L.L.C.                    Docket No. EL21-91-002

NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW AND
PROVIDING FOR FURTHER CONSIDERATION

(May 22, 2023)

Rehearing has been timely requested of the Commission's order issued on March 24, 2023, in this proceeding. *PJM Interconnection, L.L.C.*, 182 FERC ¶ 61,194 (2023). In the absence of Commission action on a request for rehearing within 30 days from the date it is filed, the request for rehearing may be deemed to have been denied. 16 U.S.C. § 825*l*(a); 18 C.F.R. § 385.713 (2022); *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc).

As provided in 16 U.S.C. § 825*l*(a), the request for rehearing of the above-cited order filed in this proceeding will be addressed in a future order to be issued consistent with the requirements of such section. As also provided in 16 U.S.C. § 825*l*(a), the Commission may modify or set aside its above-cited order, in whole or in part, in such manner as it shall deem proper.

Kimberly D. Bose,
Secretary.

**ATTACHMENT C**

| Party | Primary Person or Counsel of Record to be Served | Other Contact to be Served |
|---|---|---|
| American Electric Power Service Corporation | Stacey Burbure<br>American Electric Power Company<br>801 Pennsylvania Avenue, NW<br>Washington DC, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>slburbure@aep.com | LaChon Turner<br>AEP COMPANIES<br>801 Pennsylvania, Avenue, NW<br>Suite 735<br>Washington, DISTRICT OF COLUMBIA 20004-2615<br>lturner@aep.com |
| American Electric Power Service Corporation | | Jessica Cano<br>Asst. General Counsel - FERC<br>AEP Service Corporation<br>1 RIVERSIDE PLZ<br>COLUMBUS, OHIO 43215<br>jacano@aep.com |
| American Municipal Power, Inc. | Lisa McAlister<br>Deputy General Counsel - FERC/<br>American Municipal Power, Inc.<br>1111 Schrock Road<br>Suite 100<br>Columbus, OHIO 43229<br>UNITED STATES<br>lmcalister@amppartners.org | Gerit F. Hull<br>Deputy General Counsel - Regul<br>American Municipal Power, Inc.<br>1111 SCHROCK RD STE 100<br>COLUMBUS, OHIO 43229<br>ghull@amppartners.org |
| American Municipal Power, Inc. | | Christopher J Norton<br>Director of Market Regulatory<br>American Municipal Power, Inc.<br>1111 Schrock Road<br>Suite 100<br>Columbus, OHIO 43229<br>cnorton@amppartners.org |
| Calpine Corporation | Sarah Novosel<br>Senior VP and Managing Counsel<br>Calpine Corporation<br>717 TEXAS ST STE 1000<br>HOUSTON, TEXAS 77002<br>UNITED STATES<br>snovosel@calpine.com | David Scarpignato<br>Calpine Corporation<br>717 Texas Avenue<br>Suite 1000<br>Houston, TEXAS 77002<br>david.scarpignato@calpine.com |

| | | |
|---|---|---|
| Delaware Division of the Public Advocate | Regina Iorii<br>Deputy Attorney General<br>Delaware Department of Justice<br>Delaware Department of Justice<br>820 N. French Street, 4th Floor<br>Wilmington, DELAWARE 19801<br>UNITED STATES<br>regina.iorii@delaware.gov | Andrew C. Slater<br>Delaware Public Advocate<br>Delaware Public Advocate<br>29 S STATE ST<br>DOVER, DELAWARE 19901<br>andrew.slater@delaware.gov |
| Delaware Division of the Public Advocate | | Ruth A Price<br>Delaware Deputy Public Advocat<br>State of Delaware<br>820 N. French Street<br>Carvel State Office Building<br>Wilmington, DELAWARE 19801<br>ruth.price@delaware.gov |
| Delaware Division of the Public Advocate | | Andrea Maucher<br>Public Utilities Analyst<br>Delaware Division of the Public Advocate<br>29 S STATE STREET ALY<br>DOVER, DELAWARE 19904<br>andrea.maucher@delaware.gov |
| Dominion Energy Services, Inc. | Wesley Walker<br>Senior Assistant General Couns<br>Dominion Companies<br>PO Box 25615<br>Richmond,VIRGINIA 23260-5615<br>UNITED STATES<br>wesley.walker@dominionenergy.com | Wesley Walker<br>Senior Assistant General Couns<br>Dominion Companies<br>PO Box 25615<br>Richmond,VIRGINIA 23260-5615<br>wesley.walker@dominionenergy.com |
| Duke Energy Corporation | Molly Suda<br>Duke Energy Corporation<br>1301 PENNSYLVANIA AVE NW STE 200<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>molly.suda@duke-energy.com | |

| | | |
|---|---|---|
| Dynegy Marketing and Trade, LLC | James Quinn<br>VP, FERC-jurisdictional market<br>Vistra Energy Corp.<br>325 7th St NW<br>Suite 520<br>Washington, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>arnie.quinn@vistraenergy.com | Jessica H Miller<br>Managing Counsel<br>Vistra Corp.<br>1005 Congress Avenue, Suite 750<br>Austin, TEXAS 78701<br>VistraFERC@vistracorp.com |
| Federal Energy Regulatory Commission | Jeffrey Janicke<br>888 First Street, N.E.<br>Washington, DISTRICT OF COLUMBIA 20426<br>UNITED STATES<br>Jeffrey.Janicke@ferc.gov | George D Billinson<br>George.Billinson@ferc.gov |
| Hazleton Generation LLC | Jonathan Gottlieb<br>Partner<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, NW, Suite 700<br>Washington, DISTRICT OF COLUMBIA 20001-3980<br>UNITED STATES<br>JonathanGottlieb@eversheds-sutherland.com | |
| Hazleton Generation LLC | Allison Salvia<br>Eversheds Sutherland (US) LLP<br>700 6TH ST NW<br>WASHINGTON, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>AllisonSalvia@eversheds-sutherland.com | |
| Hazleton Generation LLC | William Simmerson<br>Associate<br>700 6th Street NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES | |

| | | |
|---|---|---|
| | willsimmerson@eversheds-sutherland.com | |
| Indiana Office of Utility Consumer Counselor | Arthur Iler<br>Deputy Consumer Counsel - Fede<br>Indiana Office of Utility Consumer Counselor<br>115 W Washington St<br>Ste 1500 South<br>Indianapolis, INDIANA 46204<br>UNITED STATES<br>ailer@oucc.in.gov | Mike Gahimer<br>Indiana Office of Utility Consumer Counselor<br>115 W Washington Street<br>Suite 1500 South<br>Indianapolis, INDIANA 46204<br>mgahimer@oucc.in.gov |
| J-POWER USA Development Co., Ltd. | | Hiroaki Ushijima<br>Vice Chairman<br>J-POWER USA Development Co. Ltd.<br>1900 E GOLF RD STE 1030<br>SCHAUMBURG, ILLINOIS 60173<br>hushijima@jpowerusa.com |
| LS Power Development, LLC | Neil Levy<br>McDermott Will & Emery LLP<br>500 North Capitol Street, NW<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>nlevy@mwe.com | |
| LS Power Development, LLC | Marjorie Philips<br>VP, Wholesale Market Policy<br>LS Power Associates, L.P.<br>1700 Broadway, 38th Floor<br>New York, NEW YORK 10019<br>UNITED STATES<br>mphilips@lspower.com | |
| LS Power Development, LLC | Tom Hoatson<br>1 Tower Center<br>East Brunswick, NEW JERSEY 08816<br>UNITED STATES<br>thoatson@lspower.com | |

| | | |
|---|---|---|
| Maryland Office of People's Counsel | William Fields<br>Deputy People's Counsel<br>6 St. Paul St., Ste 2102<br>Baltimore, MARYLAND 21202<br>UNITED STATES<br>william.fields@maryland.gov | |
| Maryland Office of People's Counsel | Stephen Pearson<br>Attorney<br>Spiegel & McDiarmid LLP<br>1875 Eye St, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>steve.pearson@spiegelmcd.com | Scott H. Strauss, ESQ<br>Spiegel & McDiarmid LLP<br>1875 Eye Street NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20006<br>Scott.Strauss@spiegelmcd.com |
| Monitoring Analytics, LLC | Jeffrey Mayes<br>General Counsel<br>Monitoring Analytics, LLC<br>2621 Van Buren Avenue, Suite 160<br>Valley Forge Corporate Center<br>Eagleville, PENNSYLVANIA 19403<br>UNITED STATES<br>jeffrey.mayes@monitoringanalytics.com | Joseph Bowring<br>Monitoring Analytics, LLC<br>2621 Van Buren Avenue, Suite 160<br>Norristown, PENNSYLVANIA 19403<br>Joseph.Bowring@monitoringanalytics.com |
| Monitoring Analytics, LLC | | Suzette N Krausen<br>Executive Assistant<br>Monitoring Analytics, LLC<br>2621 Van Buren Ave Ste 160<br>Norristown, PENNSYLVANIA 19403<br>Suzette.Krausen@monitoringanalytics.com |
| NRG Power Marketing LLC and Midwest Generation, LLC | Cortney Slager<br>Assistant General Counsel - Re NRG Companies<br>804 Carnegie Center<br>Princeton, NEW JERSEY 08540<br>UNITED STATES<br>cortney.slager@nrg.com | Neal Fitch<br>Sr. Director, Regulatory Affai<br>NRG Energy, Inc.<br>804 CARNEGIE CTR<br>PRINCETON, NEW JERSEY 08540<br>neal.fitch@nrg.com |
| NRG Power Marketing | Jennifer Hsia<br>Managing Senior Counsel | |

| | | |
|---|---|---|
| LLC and Midwest Generation, LLC | NRG Energy<br>910 Louisiana Street<br>Houston, TEXAS 77002<br>UNITED STATES<br>jennifer.hsia@nrg.com | |
| Office of the People's Counsel for the District of Columbia | Frederick Heinle<br>Assistant People's Counsel<br>Office of the People's Counsel for the District of Columbia<br>1133 15th Street, N.W., Suite 500<br>Washington, DISTRICT OF COLUMBIA 20111<br>UNITED STATES<br>fheinle@opc-dc.gov | Anjali G Patel<br>Vice President for Clean Energ<br>Americans for a Clean Energy Grid<br>3100 CLARENDON BLVD STE 800<br>ARLINGTON, VIRGINIA 22201<br>anjali@dgardiner.com |
| Office of the People's Counsel for the District of Columbia | Scott Strauss<br>1875 Eye Street NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>Scott.Strauss@spiegelmcd.com | Stephen C. Pearson<br>Attorney<br>1875 Eye St, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20006<br>steve.pearson@spiegelmcd.com |
| Ohio Federal Energy Advocate | Thomas Lindgren<br>Assistant Attorney General<br>Ohio Public Utilities Commission<br>30 East Broad Street<br>16th Floor<br>Columbus, OHIO 43215-3793<br>UNITED STATES<br>thomas.lindgren@ohioattorneygeneral.gov | Lori Sternisha<br>Public Utilities Commission of Ohio<br>180 East Broad Street<br>3rd Floor<br>Columbus, OHIO 43215<br>lori.sternisha@puco.ohio.gov |
| Old Dominion Electric Cooperative | Adrienne Clair<br>Thompson Coburn LLP<br>Thompson Coburn LLP<br>1909 K ST NW STE 600<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>aclair@thompsoncoburn.com | Jecoliah R Williams<br>Associate Attorney<br>Thompson Coburn LLP<br>1909 K Street, N.W.<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20006-1167<br>jwilliams@thompsoncoburn.com |
| PJM Industrial | Robert Weishaar<br>McNees Wallace & Nurick LLC | Susan E Bruce<br>McNees Wallace & Nurick LLC |

| Customer Coalition | 1200 G Street, NW<br>Suite 800<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>bweishaar@mcneeslaw.com | 100 Pine St<br>Harrisburg, PENNSYLVANIA 17101<br>sbruce@mcneeslaw.com |
|---|---|---|
| PJM Industrial Customer Coalition | | Kenneth R Stark<br>McNees Wallace & Nurick LLC<br>100 PINE ST<br>HARRISBURG, PENNSYLVANIA 17101<br>kstark@mcneeslaw.com |
| PJM Industrial Customer Coalition | | David S. Mabry<br>McNees Wallace & Nurick LLC<br>100 Pine Street<br>Harrisburg, PENNSYLVANIA 17101<br>dmabry@mwn.com |
| PJM Industrial Customer Coalition | | Lauren Huff<br>Paralegal<br>McNees Wallace & Nurick LLC<br>100 Pine Street<br>P.O. Box 1166<br>Harrisburg, PENNSYLVANIA 17108<br>lhuff@mwn.com |
| PJM Interconnection, L.L.C. | Paul Flynn<br>Wright & Talisman, PC<br>1200 G St. NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>flynn@wrightlaw.com | |
| PJM Interconnection, L.L.C. | Wendy Warren<br>Wright & Talisman, PC<br>1200 G Street, N.W.<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20005 | |

| | | |
|---|---|---|
| | UNITED STATES<br>warren@wrightlaw.com | |
| PJM Interconnection, L.L.C. | CRAIG GLAZER<br>V.P., Federal Gov't Policy<br>PJM Interconnection, L.L.C.<br>1200 G ST NW STE 600<br>WASHINGTON, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>CRAIG.GLAZER@PJM.COM | |
| PJM Interconnection, L.L.C. | Steven Pincus<br>Assistant General Counsel - Re<br>PJM Interconnection, L.L.C.<br>2750 Monroe Blvd.<br>Audubon, PENNSYLVANIA 19403<br>UNITED STATES<br>steven.pincus@pjm.com | |
| PJM Interconnection, L.L.C. | David Berman<br>Attorney<br>Wright & Talisman, PC<br>1200 G Street NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>berman@wrightlaw.com | |
| PJM Power Providers Group | Glen Thomas<br>1060 First Avenue<br>Suite 400<br>King of Prussia, PENNSYLVANIA 19406<br>UNITED STATES<br>gthomas@gtpowergroup.com | Diane L Slifer<br>101 LINDENWOOD DR STE 225<br>MALVERN, PENNSYLVANIA 19355<br>dslifer@gtpowergroup.com |
| PJM Power Providers Group | | Laura Chappelle<br>6688 FOREST BEACH DR<br>HOLLAND, MICHIGAN 49423<br>laurac@chappelleconsulting.net |

| | | |
|---|---|---|
| St. Joseph Energy Center, LLC | Mark Williams<br>Mayer Brown LLP<br>Mayer Brown LLP<br>1999 K Street NW<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>MarkWilliams@mayerbrown.com | |
| Vistra Corp. | James Quinn<br>VP, FERC-jurisdictional market<br>Vistra Energy Corp.<br>325 7th St NW<br>Suite 520<br>Washington, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>arnie.quinn@vistraenergy.com | Jessica H Miller<br>Managing Counsel<br>Vistra Corp.<br>1005 Congress Avenue, Suite 750<br>Austin, TEXAS 78701<br>VistraFERC@vistracorp.com |